# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

| | | |
|---|---|---|
| LAKESOUTH HOLDINGS, LLC, | § | |
| | § | |
| *Plaintiff and Counter-Defendant*, | § | |
| | § | |
| v. | § | |
| | § | |
| ACE EVERT, INC., WAL-MART STORES, | § | Civil Action No. 3:14-CV-01348-N |
| INC. and WAL-MART STORES, TEXAS, | § | |
| LLC, | § | **(Consolidated with** |
| | § | **Case No. 3:14-cv-01877)** |
| *Defendants and Counter-Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| WORLD FACTORY, INC., E.A. | § | |
| LANGENFELD & ASSOCIATES, LTD., | § | |
| and TOUCHPOINT 360, LLC, | § | |
| | § | |
| *Counter-Defendants*. | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF CONSOLIDATED RESPONSE TO DEFENDANT ACE EVERT, INC'S MOTION TO STAY PROCEEDINGS PENDING *INTER PARTES* REVIEW (DKT. NO. 74) AND DEFENDANTS WAL-MART STORES, INC. AND WAL-MART STORES, TEXAS, LLC'S MOTION TO STAY PROCEEDINGS PENDING *INTER PARTES* REVIEW (DKT. NO. 76)**

# TABLE OF CONTENTS

I.       INTRODUCTION ……………………………………………………………..…1

II.      FACTUAL BACKGROUND …………………………………………………….2

   A.    THE PARTIES AND THEIR HISTORY WITH RESPECT TO THE '713 PATENT …………………2

   B.    The Importance of the '713 Patent's Previous Reexamination………………………….....4

   C.    The Filing of the Current Case and Defendants' Unreasonable Delay……………….......4

III.     ARGUMENT……………………………………………………………………..5

   A.    Defendants Bear the Burden to Prove a Stay is Warranted……………………….......5

   B.    A Stay Will Unduly Prejudice Plaintiff and Reward Defendants'
       Unreasonable and Tactical Delay………………………………………………….......6

       1.  Staying this case will unduly prejudice LakeSouth…………………………….6

       2.  Staying this case would provide a clear tactical disadvantage to
          LakeSouth…………………………………………………………………9

   C.    Defendants Cannot Show that Staying this Case Now will Simplify Issues………...10

   D.    The Current Stage of this Litigation Does Not Favor a Stay………………………...12

IV.      CONCLUSION……………………………………………………………………..15

## TABLE OF AUTHORITIES

### Cases

*Am. Vehicular Sciences LLC v. Toyota Motor Corp.*, No. 6:12-cv-404 MHS-JDL
(E.D. Tex. Jan. 7, 2014)………………………………………………………………15

*Ambato Media, LLC v. Clarion Co.*, No. 2:09-cv-242, 2012 U.S. Dist. LEXIS
7558 (E.D. Tex. Jan. 23, 2012)……………………………………………………......7

*Automatic Mfg. Sys, Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB,
2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013)…………………………..11, 14

*Clinton v. Jones*, 520 U.S. 681 (1997)………………………………………………5

*Emtel, Inc. v. LipidLabs, Inc.*, No. H-07-1798,
2013 U.S. Dist. LEXIS 56312 (S.D. Tex. April 29, 2013) ………………………………6

*Hunter Douglas, Inc. v. Nien Made Enter. Co.*, No. 13-cv-01412-MSK-MJW
 (D. Colo. Jan. 14, 2014)………………………………………………………………14

*Indiana Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275 (2009)…………………………6

*Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-1065-LPS,
2014 U.S. Dist. LEXIS 33687 (D. Del. Mar. 5, 2014)…………………………...…….8

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)…………………………………...…………….5, 6

*Lennon Image Tech., LLC v. Lumondi Inc. d/b/a Luminox Watch Co.*,
No. 2:13-cv-235-JRG (E.D. Tex. Jan. 6, 2014)……………………………………………15

*Lippert Components Mfg., Inc. v. AL-KO Kober, LLC*, No. 3:13-cv-697-JVB-CAN
(N.D. Ind. Jan. 16, 2014)………………………………………………...………………15

*Rensselaer Polytechnic Institute v. Apple Inc.*, No. 1:13-cv-0633 (DEP),
2014 U.S. Dist. LEXIS 5186 (N.D.N.Y. Jan. 15, 2014)…………………………...……14

*SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158, 2012 U.S. Dist. LEXIS
35779 (E.D. Tex. Mar. 16, 2012)………………………………………………………11

*Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-224 JDL,
2014 U.S. Dist. LEXIS 129388 (E.D. Tex. Jan. 14, 2014)…………………………8, 15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028
(N.D. Cal. 2013)………………………………………………………………………6

**<u>Statutes</u>**

35 U.S.C. § 141……………………………………………………………………………..7

35 U.S.C. § 313……………………………………………………………………………..7

35 U.S.C. § 314……………………………………………………………………………..6

35 U.S.C. § 315……………………………………………………………………………..9

35 U.S.C. § 316……………………………………………………………………………..7

35 U.S.C. § 319……………………………………………………………………………..7

## I. INTRODUCTION

Defendant Ace Evert, Inc. ("Ace Evert") and Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC ("Wal-Mart") have filed two Motions asking this Court to stay this well-progressed litigation based solely on their *hope* that the United States Patent and Trademark Office ("PTO") will grant an eleventh hour request for *Inter Partes* Review ("IPR") of the only asserted patent, which has already survived a *previous inter partes* reexamination proceeding. Ace Evert literally waited until the last two weeks available to it under the law – 350 days after this case was filed – to file the IPR, despite the fact that it could have filed much earlier. Plaintiff LakeSouth Holdings, LLC ("LakeSouth") now has until mid-July to respond to Defendant's request to initiate an IPR.  Thus, the parties – and this Court – will not know whether the PTO decides to even initiate an IPR in this case until late September, and even if it does, that IPR will not be resolved for more than a year.  Moreover, neither Wal-Mart Defendant joined in the IPR request, and are therefore not bound by the estoppel provisions should the IPR be instituted – a material factor that complicates this case, but was omitted from their Motion.

Could Ace Evert or Wal-Mart have filed this IPR request earlier?  Absolutely – Ace Evert has known of LakeSouth's patents – including U.S. Patent No. 6,612,713 ("the '713 Patent"), subject of this suit – for years, from licensing discussions in 2010.  Had Ace Evert submitted its IPR request at any time before this year, the parties and this Court would not have already expended the tremendous resources litigating Defendants' infringement of the '713 Patent that they now have.  Even after this case was filed, Defendants could have filed an IPR instead of waiting for the Court to resolve their partial Motions to Dismiss first, since those Motions would not have resolved the entire case.  Defendants should not be rewarded for their unreasonable and tactical delay by receiving a stay.

Furthermore, initiation of an IPR in this matter is not the virtual guarantee that Defendants claim in their Motions. Ace Evert's IPR request, for example, does not allege anticipation as grounds for invalidity, and therefore relies only on obviousness to invalidate the claims. Ace Evert's lead obviousness reference ("Small") in its IPR request was already considered by the PTO during the previous *inter partes* reexamination of the '713 Patent. In fact, three of the five prior art references relied on by Ace Evert in its IPR were considered during the prior reexamination. As such, Ace Evert's IPR request merely rehashes the same arguments previously considered and rejected by the PTO during the first reexamination.

Finally, Wal-Mart's separate Motion to Stay is even more unfounded than Ace Evert's, because Wal-Mart seeks the benefit of any PTO decision from the IPR proceedings, without any of the estoppel consequences that should follow, since Wal-Mart did not join Ace Evert as a signatory to the IPR proceeding. A comparison of the two Motions to Stay highlights this unfair consequence and counsels against this Court granting a stay.

In sum, granting Defendants' Motions to Stay would unduly prejudice Plaintiff, would reward Ace Evert's tactical delay, and would not simplify the issues in this case. This case is not in its infancy, with claim construction briefing completed, expert reports due in sixty days, and the close of discovery in less than six months. For these reasons and others set forth herein, this Court should deny Defendants' Motions to Stay.

## II.  FACTUAL BACKGROUND

### A.      The Parties and Their History With Respect to the '713 Patent.

Plaintiff LakeSouth is a small, family-owned business with its principal place of business here in the DFW metroplex – in Southlake, Texas. LakeSouth and its affiliate World Factory, Inc. were founded by the named inventor on the '713 Patent, Gregory Kuelbs. Mr. Kuelbs and

his nephew, John Kuelbs Jr., are longtime Texas residents who manage the business of World Factory and LakeSouth.   In prior years, World Factory's business was commercializing the inventions of the '713 patent and other patents developed by Mr. Kuelbs.[1]  LakeSouth is the affiliated holding company that holds, licenses, and otherwise manages the intellectual property of Mr. Kuelbs and World Factory, following a November 2013 assignment.

Defendant Ace Evert is a California corporation that is partially owned by and operates as the U.S. subsidiary of a Chinese company known as the Evertrust Group.   The ownership overlaps between Evertrust Group, Ace Evert, and other associated or affiliated companies pertinent to this case are presently unclear.  Ace Evert sells infringing products through the stores of the Wal-Mart Defendants, as alleged in Plaintiff's First Amended Complaint.

The '713 Patent was issued on September 2, 2003.  As discussed above, an *inter partes* reexamination proceeding was filed against the '713 Patent on August 12, 2005.  The examiner ultimately upheld the validity of the '713 Patent after considering multiple prior references, a decision which was affirmed on appeal at the Patent Trial and Appeal Board.  A reexamination certificate for the '713 Patent was finally issued on September 23, 2013.

During the pendency of the first reexamination, representatives from World Factory traveled to China in 2010 to meet with representatives of Defendant Ace Evert.  *See* Dkt. No. 14 at 6.  At that meeting, the parties discussed the fact that World Factory owned patent rights regarding solar-powered umbrellas.  *Id.*   Ace Evert showed World Factory its solar-powered umbrellas, and told World Factory it wished to avoid patent infringement issues.  For the next two years, World Factory and Ace Evert discussed doing business together, but never consummated an arrangement, and Ace Evert never received a license to the '713 Patent.  *Id.*

---

[1] Mr. Kuelbs is named as inventor on many patents, most of which relate to consumer products that in the past were commercialized through the business of World Factory.

World Factory then sent Ace Evert a very specific letter concerning the '713 Patent in February 2014, before filing the present patent infringement lawsuit.  *Id.*

**B.      The Importance of the '713 Patent's Previous Reexamination.**

As mentioned earlier, the '713 Patent has already been the subject of an earlier *inter partes* reexamination, pending for eight years – from 2005 to 2013.  *See* Declaration of Eric M. Albritton, attached as Exhibit 1 at § 2.  That previous reexamination is important to the outcome of the present Motion for two reasons.

First, the previous reexamination affects the balance of certain factors for the Court's consideration in the present Motion to Stay.  The previous reexamination minimizes any simplification of the issues which could possibly result from Ace Evert's repetitive reexamination request.  Further, the previous reexamination compounds the prejudice to LakeSouth caused by Ace Evert's repetitive reexamination request, since the '713 Patent has already endured eight years of PTO scrutiny.

Second, the previous reexamination of the '713 Patent is important for the present Motion because of the prior art references that the PTO already considered.  Three of the five references at issue in the IPR petition were considered by the PTO during the first reexamination.  *Id.* at § 4. Moreover, the lead reference in the IPR petition was considered as a collateral obviousness reference during the first reexamination.  *Id.*  Furthermore, Ace Evert does not assert that any of these references are invalidating prior art by anticipation as defined in 35 U.S.C. § 102.  Instead, Ace Evert can only argue that these references render the challenged claims of the '713 Patent obvious under 35 U.S.C. § 103.  *Id.* at § 5.  The impact of both of these facts on the Court's determination of whether to stay this case is discussed in greater detail in Section III, *infra*.

**C.      The Filing of the Current Case and Defendant's Unreasonable Delay.**

This case was filed on April 14, 2014.  By statute, Ace Evert only had one year from that date to file its IPR request.  However, had it chosen to, Ace Evert (or Wal-Mart) could have filed an IPR request at any time prior to this litigation – including during the time period when Ace Evert was in negotiations with World Factory regarding its desire to sell solar-powered umbrellas without infringing World Factory's patents.  Defendants declined to seek PTO guidance on these patent rights at any time until the eleventh hour, when Ace Evert filed its IPR request just two weeks before its final statutory deadline.

During Ace Evert's delay in filing its IPR, substantial activities occurred in this litigation: (1) Plaintiff's Complaint was filed and served; (2) Plaintiff also sued Wal-Mart for its infringement; (3) both cases were consolidated by this Court; (4) the parties spent substantial resources litigating issues such as Motions to Dismiss filed by all Defendants; (5) the Court ruled on those Motions, denying them; (6) the parties expended significant time and money drafting and serving their Infringement and Invalidity Contentions; and (7) the parties spent more time and money drafting and filing the required Claim Construction briefing.  Only after all of this work, with less than sixty days remaining before the expert discovery deadline, did Ace Evert file its IPR request.  Wal-Mart did not join Ace Evert in filing the IPR, but yet seeks to gain the benefit of the IPR, including a stay of this litigation.

### III.  ARGUMENT

**A.      Defendants Bear the Burden to Prove a Stay is Warranted**

This Court has the inherent power to control its own docket, including the power to stay proceedings.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  "A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of

judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Indiana Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276-77 (2009) (internal citations omitted).   Indeed, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.   When analyzing whether a stay is warranted, both Plaintiff and Defendant agree that this Court considers: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and a trial date has been set." *Emtel, Inc. v. LipidLabs, Inc.*, No. H-07-1798, 2013 U.S. Dist. LEXIS 56312, at *15 (S.D. Tex. April 29, 2013) (citations omitted).   However, "[t]he court's inquiry is not limited to these three factors–the totality of the circumstances governs." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (N.D. Cal. 2013).

While Plaintiff and Defendants agree on the three-factor test that this Court should apply, Defendants' Motions are noticeably silent on the fact that Defendants bear the burden of proving a clear case of inequity in being required to go forward without a stay.   Defendants cannot make this showing, because each of the three factors weighs in favor of denying Defendants' Motions to Stay.

**B.**   **A Stay Will Unduly Prejudice Plaintiff and Reward Defendants' Unreasonable and Tactical Delay.**

   **1.**   **Staying this case will unduly prejudice LakeSouth**.

Staying this case will cause undue prejudice to LakeSouth for several reasons.   First, LakeSouth has already incurred eight years of uncertainty over its patent rights by virtue of the previous reexamination of the '713 Patent, in which LakeSouth ultimately prevailed and received

a reissued patent following the reexamination.  Now, the IPR process will likely take an additional several years.  Once a petition for review has been filed, the PTO has six months to grant or deny institution of the IPR.  *See* 35 U.S.C. § 314(b) (The PTAB shall determine whether to institute an IPR "within 3 months after (1) receiving a preliminary response to the petition under section 313 [35 USCS § 313]; or (2) if no such preliminary response is filed, the last date on which such response may be filed.").  The PTO must issue a final determination within one year of granting IPR, which may be extended for an additional six months for good cause.  35 U.S.C. § 316(a)(11).  After a final determination is made, either party may appeal to the Federal Circuit.  35 U.S.C. § 319; 35 U.S. C. § 141.

Thus, LakeSouth's response to the Ace Evert IPR petition is not even due until mid-July, and the PTO has an additional three months after that to determine whether to even institute an IPR.  Including an appeal to the Federal Circuit, which may take up to two years, the entire IPR process may take well over three years from now.  LakeSouth has already endured eight years worth of reexamination at the PTO on this *same* patent, overcoming a majority of the same prior art references Ace Evert now relies on its IPR.  Granting a stay and preventing LakeSouth from enforcing its valid patent rights for an additional three years or more is unduly prejudicial, given the significant delay of enforcement rights that LakeSouth has already endured on the '713 Patent.

Secondly, LakeSouth's ability to enforce its patents would be unduly prejudiced by another stay because, with these repeated delays, witnesses "may become unavailable, their memories may fade, and evidence may be lost while [IPR] proceedings take place."  *See Ambato Media, LLC v. Clarion Co.*, No. 2:09-cv-242, 2012 U.S. Dist. LEXIS 7558, at *5 (E.D. Tex. Jan. 23, 2012).  LakeSouth has "an interest in the timely enforcement of its patent right[s]," and a stay

would preclude LakeSouth from enforcing its patent rights for several more years beyond the current trial setting. *See id.* at *4-5. This factor alone militates against granting a stay.

Defendants also dismiss the potential prejudice to LakeSouth because LakeSouth "does not practice the asserted patent, sell any products, or compete with any Defendants." *See* Defendants' Brief in Support of Motions to Stay at 5. This argument is misplaced, because World Factory – an affiliate company with common ownership to LakeSouth and who has a license to the '713 patent – has sold products and competed with Defendants up until the very recent past.[2] Furthermore, Defendants have taken the unusual step in a patent case of suing World Factory in this same case. As such, the cases Defendants cite regarding lack of prejudice to a non-practicing entity are not on point here. World Factory, whom Defendants have brought in as a Counter-Defendant, is LakeSouth's licensee and will suffer irreparable harm if this stay is granted against its patent-holding affiliate company LakeSouth; this would result in the harm of diminished royalties to LakeSouth. A stay would result in World Factory and LakeSouth's business being once again interrupted by a long PTO proceeding, without concomitant recognition of its intellectual property rights by this Court, and would also leave an unresolved cloud over World Factory because of the claims against it asserted by Defendants.

Furthermore, LakeSouth "has a recognized interest in the timely enforcement of its patent rights." *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-224 JDL, 2014 U.S. Dist. LEXIS 129388, at *4-7 (E.D. Tex. Jan. 14, 2014) (denying motion to stay pending IPR even though the plaintiff was a "non-practicing entity"). At most, the fact that LakeSouth and Defendants are not direct competitors may diminish — though not eliminate — prejudice to a plaintiff that would result from a stay. *See, e.g., Intellectual Ventures I LLC v.*

---

[2] Defendants admit this fact in the same paragraph on page 5 of their Briefs in Support of their Motions to Stay.

*Xilinx, Inc.*, No. 10-1065-LPS, 2014 U.S. Dist. LEXIS 33687, at *4-7 (D. Del. Mar. 5, 2014).

When coupled with the fact that Defendants made World Factory a party to this suit, World

Factory – as Plaintiff's licensee – has a distinct interest in establishing the rights of the '713

Patent that would be irreparably harmed by another stay due to PTO proceedings.  World Factory

likewise has a direct interest in eliminating the cloud over it that has been caused by Defendants'

claims against it.  These unique facts weigh in favor of finding that undue prejudice would be

caused by a stay.

### 2.      Staying this case would provide a clear tactical disadvantage to LakeSouth.

The second prong of this first factor of the Court's analysis also supports denying the

requested Motions to Stay.  By statute, Ace Evert will be estopped from asserting § 102 and

§ 103 prior art that it "raised or could have raised" against the claims subject to any IPR review,

if one is initiated.  *See* 35 U.S.C. § 315(e)(2).[3]  However, the Wal-Mart Defendants are not

subject to this estoppel bar, because they did not join in the filing of the IPR request.

A comparison of the two nearly identical Briefs in Support of Motions to Stay filed by

the Defendants leaves a gaping hole of silence surrounding this important issue.  *Compare* Dkt.

No. 75 at 9, *with* Dkt. No. 77 at 9.  On page 9 of each Defendant's Brief, the body of the

argument in each Defendant's filing is word-for-word identical, until the last sentence on the

page.  At that point, Ace Evert admits that "[e]ven if the PTO confirms all of the claims, a stay

will simplify the case because IPR will streamline the invalidity issues because Defendant will

be bound by estoppel."  *See* Dkt. No. 75 at 9.  However, the Wal-Mart Defendants simply omit

this sentence from their Brief, and then resume the word-for-word identical argument as Ace

Evert in the following paragraph.  *See* Dkt. No. 77 at 9.

---

[3] ("The petitioner in an *inter partes* review of a claim … that results in a final written decision … may not assert [] in a civil action … that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.").

The import of this omission is clear: Defendants seek to gain a tactical advantage over LakeSouth.  By not joining the IPR request, the Wal-Mart Defendants seek to avoid the statutory estoppel that would bar them from challenging the validity of the '713 Patent at trial using the same references considered in the IPR.  Thus, Defendants – who have been consolidated in this one case together – would receive two bites at the apple on validity, one in the IPR and a second at trial, using the exact same prior art references.  This is exactly the type of prejudice that the estoppel provision is designed to avoid.  Staying the case pending the outcome of the IPR request would thus tactically benefit Defendants and provide a clear tactical disadvantage to LakeSouth.

Moreover, neither of the Defendants will be precluded from asserting *other* bases of invalidity (*e.g.*, defenses under 35 U.S.C. §§ 101 and 112) or equitable defenses such as laches and estoppel as a result of the IPR – the statutory estoppel provisions are not that far-reaching. Those portions of the case will be required to go forward, albeit not for several years after the current trial setting of this action if a stay is granted.

Because the Wal-Mart Defendants, who have filed their own Motion to Stay in this consolidated litigation, will obtain the benefits of a stay and IPR without the attendant risk of estoppel, a stay would provide a clear tactical disadvantage to LakeSouth. Therefore, the first factor of the Court's analysis weighs in favor of denying the Motions to Stay.

## C.      Defendants Cannot Show that Staying this Case Now will Simplify Issues.

At this stage, Defendants cannot prove that an immediate stay will simplify the issues in dispute in this case.  The PTO is unlikely to decide whether to initiate IPR, and if so, on what grounds, before the end of September.  Even then, the PTO may choose to proceed on only one or some of the challenged claims, or on only some of the alleged invalidity grounds raised.  Until the PTO takes an interest in reviewing the challenged claims, the Court is not in a position to

make an informed decision as to whether IPR will simplify the issues and trial.  *See Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.,* No. 6:12-cv-1727-Orl-37DAB, 2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013) at *6-9 (holding "a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed" and noting that, until the PTAB grants review, the court is not "in a position to make an informed decision as to whether [IPR] will simplify the issues and trial").

Second, even if an IPR is instituted, there are many issues present in this case that the PTO cannot and will not address.  Among those issues are (1) infringement and damages; (2) defenses under 35 U.S.C. §§ 101 and 112; and (3) equitable defenses such as laches and estoppel.  Moreover, if any asserted claim from the '713 patent survives IPR, the value of a stay will be marginalized.  The parties will still have to take discovery relating to (for example) infringement, damages, and enforceability.  Discovery taken while IPR is ongoing will not be wasted.

Third, if the PTO affirms the validity of the asserted claims, issues of validity will not be simplified because the Wal-Mart Defendants have not joined in the IPR.  Accordingly, absent a final decision by the PTO that the asserted claims of the patent-in-suit are invalid (a decision that will not be made until well after the Court's January 2016 trial setting), any argument that issues of validity will be simplified by an IPR is speculation.  "[T]he interests of justice will be better served dealing with the contingency [of claim cancellation] when and if it occurs, rather than putting this case indefinitely on hold."  *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158, 2012 U.S. Dist. LEXIS 35779, at *7 (E.D. Tex. Mar. 16, 2012) (quotations omitted).

Fourth, Defendants' statistics concerning the likelihood that it will prevail in cancelling or modifying the claims of the '713 Patent are misleading.  Defendants paint with a broad brush

in their briefing, setting forth statistics about all IPRs initiated at the Patent Office. *See* Dkt. No. 75 and 77 at 4. Defendants fail to tell the Court how many of those IPRs are "first-time" reexaminations – rather than a second, repetitive reexamination covering many of the same prior art references, as is the case here. Thus, it is far less likely in this case that the PTO will reverse its earlier affirmation of the validity of the challenged claims.[4]

In sum, very little simplification would result for this Court if a stay was granted as a result of Defendants' IPR request. In fact, if Defendants were truly interested in simplifying the issues in this case, they would agree in their Reply Brief that the PTO's estoppel provision should apply immediately. In other words, if Defendants believe they are entitled to a stay of litigation starting now, then they should agree not to raise any of the prior art references in the IPR request as grounds for invalidity in this litigation in the future, even if the PTO declines to institute an IPR. Failure to make such an agreement in their Reply would be further proof that Defendants are not interested in simplifying the issues in this case, but are only seeking to gain tactical advantage by their IPR request.

### D.     The Current Stage of this Litigation Does Not Favor a Stay.

The parties have already worked their way well into the Court's schedule for this case. Plaintiff and Defendants have prepared and served infringement and invalidity contentions, and accompanying document productions. The parties have completed and filed all of their claim construction briefing, and are simply awaiting a claim construction Order from the Court.

---

[4] This likelihood of success on the merits in the IPR is further diminished when looking at the actual arguments proffered by Ace Evert. Defendants fail to tell the Court how many of the IPRs cited in its statistics only involve claims of obviousness under § 103, rather than anticipation under § 102. Ace Evert's IPR request fails to include any prior art references of anticipation, rendering its odds of success at the PTO even slimmer.

Furthermore, the parties' expert designation deadline is just two months away (July 10)[5], and discovery closes in November, with a trial date set for January 2016.   Thus, Defendants' suggestion that this case is "still in the early stages" is misplaced.  *See* Dkt. No. 75 and 77 at 10.

As explained above, the PTO's decision whether to institute IPR will likely not occur until late September, and a final IPR decision is unlikely before September 2016.   After that time, the parties may appeal the decision to the Federal Circuit.   Absent a stay, the parties will reach a resolution of this case long before the PTO will finally determine any IPR, assuming one is even instituted.   Regardless of the perceived "early stages" of this case as Defendants argue, the benefits of a stay are outweighed by the rapid schedule this case follows.

Moreover, Defendants' various explanations for why Ace Evert delayed nearly a year after the filing of this case before filing an IPR request do not add up.   Defendants claim that Ace Evert "diligently prepared and filed its IPR petition" after the Court denied Ace Evert's Motion to Dismiss.   *See* Dkt. No. 75 and 77 at 6.   Defendants claim that after the Motion to Dismiss was denied, Ace Evert "moved quickly" to file its IPR.   *Id*. at 7.   However, the Court denied the Motion to Dismiss on December 2, 2014, and Ace Evert delayed another four months before filing the IPR petition in April.   During that intervening time period, LakeSouth expended significant resources on this case.   Such an unexplained delay can hardly be considered "diligent."

Moreover, Defendants fail to explain at all why they waited on the Court's ruling on the Motions to Dismiss before filing the IPR.   This is unexplainable, because Defendants' Motions to Dismiss were only <u>partial</u> Motions to Dismiss, directed toward not all, but merely "several of Plaintiff's causes of action," specifically "contributory infringement, inducement, and willful

---

[5] Defendants have recently suggested to LakeSouth that the parties consider moving the expert designation deadline, but as of this date, no subsequent deadline has been proposed or agreed to.

infringement." *See* Dkt. No. 12 at 2.[6]  Given that the Motions to Dismiss would not have resolved the entire case even if Defendants had prevailed, Defendants had no reason to wait until the resolution of those Motions before filing the IPR request.  This makes Ace Evert's eleventh-hour IPR filing even more untimely than it appears on its face.

Finally, Defendants further argue that "[c]ourts routinely stay cases in similar stages to this case."  *See* Dkt. No. 75 and 77 at 11.   However, a "stay pending an administrative proceeding is not automatic; rather, it must be based upon the circumstances of the individual case before the court."  *Automatic Mfg. Sys.*, 2013 U.S. Dist. LEXIS 67790, at *4.  When faced with a similar set of facts, the United States District Court for the Middle District of Florida stated:

> [i]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO.  All in all, a petition can be pending before the USPTO for up to six months before the agency decides to "initiate" an *inter partes* review.  This six months is a kind of limbo that requires the court and the parties to wait while the USPTO makes its decision.  If it chooses not to proceed, then this action will have been left languishing on the Court's docket with no discovery, no positioning of the parties on claim construction, and no dispositive motions.  Put simply, the parties will be no closer to trial in a type of case that requires "early substantive disclosure" in order to efficiently manage discovery and pretrial motion practice.

*Id.*, at *7.  Other courts agree.  *Hunter Douglas, Inc. v. Nien Made Enter. Co.*, No. 13-cv-01412-MSK-MJW, Minute Order, pp. 1-2 (D. Colo. Jan. 14, 2014) (denying motion to stay where PTAB had not yet instituted review, exchange of claim terms was imminent, and not all Defendants petitioned for review) (*See* Ex. 1, Albritton Decl., at Ex. A); *Rensselaer Polytechnic Institute v. Apple Inc.*, No. 1:13-cv-0633 (DEP), 2014 U.S. Dist. LEXIS 5186, at *17-22 (N.D.N.Y. Jan. 15, 2014) (denying motion to stay where PTAB had not yet instituted review);

---

[6] The Wal-Mart Defendants filed a similar partial Motion to Dismiss, directed only towards Plaintiff's indirect infringement causes of action.  *See* Dkt. No. 36 at 2.

*Lennon Image Tech., LLC v. Lumondi Inc. d/b/a Luminox Watch Co.*, No. 2:13-cv-235-JRG, Order, pp. 3-4 (E.D. Tex. Jan. 6, 2014) (denying motion to stay where PTAB had not yet instituted review, exchange of claim terms was imminent, and not all Defendants petitioned for review) (*See* Ex. 1, Albritton Decl., at Ex. B); *Am. Vehicular Sciences LLC v. Toyota Motor Corp.*, No. 6:12-cv-404 MHS-JDL, Order, p. 2 (E.D. Tex. Jan. 7, 2014) (denying motion to stay where PTAB had not yet instituted review and not all Defendants petitioned for review) (*See* Ex. 1, Albritton Decl., at Ex. C); *Lippert Components Mfg., Inc. v. AL-KO Kober, LLC*, No. 3:13-cv-697-JVB-CAN, Order, pp. 5-6 (N.D. Ind. Jan. 16, 2014) (denying motion to stay where PTAB had not yet instituted review and case was at an early stage) (*See* Ex. 1, Albritton Decl., at Ex. D); *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-224 JDL, 2014 U.S. Dist. LEXIS 129388, at *4-7 (E.D. Tex. Jan. 14, 2014) (denying motion to stay pending IPR even though the plaintiff was a "non-practicing entity," non-movant defendants agreed to be bound by IPR estoppel, and case had been litigated for over a year and a half).  Courts far from "routinely" grant a stay under circumstances both the same and different from those present in this action, and this Court should follow this prolific authority and deny Defendants' Motions to Stay.

## IV.  CONCLUSION

For the reasons set forth herein, Defendants have not met, and cannot meet, their burden of showing that the circumstances of this case justify a stay. Consequently, Plaintiff LakeSouth Holdings, LLC respectfully prays that this Court deny Defendants' Motions to Stay Proceedings Pending *Inter Partes* Review (Dkt. No. 74 and 76), and for such further relief as Plaintiff may be entitled.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Michael A. Benefield
Texas State Bar No. 24073408
mab@emafirm.com
Anthony K. Bruster, Of Counsel
Texas State Bar No. 24036280
akb@emafirm.com
**ALBRITTON LAW FIRM**
1330 North White Chapel Blvd, Suite 100
Southlake, Texas 76092
Telephone:  (817) 251-0610
Facsimile:  (903) 758-7397

Mailing Address:
P.O. Box 2649
Longview, Texas 75606

*Counsel for LakeSouth Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(d), the undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule 5.1(e).  As such, the document is being served on all counsel on this 11th day of May 2015.  L.R. 5.1(d).

Eric M. Albritton